FILED by **TM** D.C.
ELECTRONIC

Dec 13, 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80205-CR-MARRA/HOPKINS

18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1348
18 U.S.C. § 1957(a)
18 U.S.C. § 371
18 U.S.C. § 2

UNITED STATES OF AMERICA,

Plaintiff,

vs.

MITCHELL J. STEIN,

Defendant.

SEALED

# INDICTMENT

The Grand Jury Charges that:

## BACKGROUND

At all times relevant to this Indictment, unless otherwise indicated:

1.  Heart Tronics, Inc., formerly doing business as Signalife, Inc. and Recom Managed Systems, Inc. (collectively "Signalife"), was a corporation that purportedly manufactured and sold electronic heart monitor products, including a supposed state-of-the-art heart monitoring device called the Fidelity 100. Signalife was incorporated in Delaware and headquartered in Greenville, South Carolina. Signalife was a publicly traded company since in or about September 2002. Its stock was listed on the American

Stock Exchange from on or about June 8, 2005, until on or about September 15, 2008, after which time Signalife stock was listed on the Over-the-Counter Bulletin Board.

2. ARC Finance Group LLC ("ARC Finance") was a limited liability company incorporated in Delaware and headquartered in Boca Raton, Florida. On or about September 19, 2002, ARC Finance acquired approximately 85 percent of the stock of Signalife. The wife of defendant MITCHELL J. STEIN was the nominal owner of ARC Finance.

3. Defendant MITCHELL J. STEIN was a licensed attorney who was outside counsel for Signalife. STEIN resided in Boca Raton, Florida and Hidden Hills, California.

4. Co-Conspirator 1 was a handyman and STEIN's chauffeur who resided in Boca Raton, Florida. Co-Conspirator 1 purported to be, at various times, the co-Chief Technology Officer of Signalife and a consultant for Signalife.

5. The United States Securities and Exchange Commission (the "SEC") was an independent agency of the United States responsible for enforcing federal securities laws, which are designed to provide the investing public with full disclosure of all material facts regarding matters involving the offer, purchase, and sale of securities. These laws protect the investing public in the purchase of stock that is publicly distributed by maintaining fair and honest security markets and eliminating manipulative practices that tend to distort the fair and just price of stock.

## COUNT ONE
### (Conspiracy to Commit Mail Fraud and Wire Fraud)

### Overview of the Fraudulent Scheme

6. As explained more fully below, from in or about July 2005 through in or about July 2010, STEIN and others perpetrated a scheme to defraud Signalife investors by, among other things: (1) artificially inflating the price and demand for Signalife stock; (2) concealing their ownership and trading of Signalife stock; (3) misappropriating Signalife's assets; and (4) testifying falsely to the SEC to conceal their conduct.

7. STEIN and his co-conspirators inflated artificially the price and demand for Signalife stock by misrepresenting Signalife's operations and finances, including information regarding the sale of Signalife products. Among other things:

   a. STEIN and his co-conspirators created false purchase orders and purchase order confirmations that purportedly were from Signalife's customers.

   b. STEIN and his co-conspirators created false change of address notices that purportedly were from Signalife's customers.

   c. STEIN and his co-conspirators caused the issuance of false and misleading press releases claiming that Signalife had received orders to purchase its products.

   d. STEIN and his co-conspirators orchestrated the submittal of false and misleading filings to the SEC regarding Signalife's sales and shipment of products.

    e. STEIN directed Co-Conspirator 1 to identify an individual, hereinafter Individual A, to whom Signalife products could be shipped, in order to create the false appearance of shipments to an actual Signalife customer.

    f. STEIN directed Co-Conspirator 1 to obtain a toll-free phone number to be attributed falsely to Individual A for purposes of shipping Signalife products to Individual A.

    g. STEIN caused the shipment of Signalife products to Individual A.

    h. STEIN directed Co-Conspirator 1 to store temporarily the shipped products with Individual A and then have the products returned to Signalife.

8.     STEIN and his co-conspirators also concealed their ownership and trading of Signalife stock by, among other false and misleading practices, placing their shares of Signalife stock in brokerage accounts that were held in the names of other individuals but which were in fact controlled by STEIN and his co-conspirators. STEIN and his co-conspirators then directed the sale of Signalife stock from these nominee brokerage accounts and transferred the proceeds to bank accounts in their own names, thereby concealing the transfers and sales of Signalife stock by Stein and his co-conspirators from investors and Signalife executives. For example, Co-Conspirator 1 maintained a brokerage account in which he sold more than $1 million worth of Signalife stock, the proceeds of which were transferred to Stein.

9. In addition to employing nominee accounts, STEIN and his co-conspirators concealed their trading of Signalife stock through the use of purportedly blind trusts—trust accounts over which they purportedly had limited if any knowledge and control. For example, STEIN deposited millions of shares of Signalife stock owned by ARC Finance into multiple purportedly blind trusts. STEIN then caused Signalife to make public filings with the SEC stating that those shares were held in the blind trusts and that ARC Finance would have no knowledge of transactions of Signalife stock within the trusts. Contrary to the SEC filings, however, STEIN retained and exercised discretion over the purportedly blind trusts, directing the sale of more than $5 million worth of Signalife stock from the trusts.

10. STEIN and his co-conspirators misappropriated Signalife's assets primarily by orchestrating sham agreements through which Signalife paid cash and stock to third parties. For example, STEIN orchestrated a sham consulting agreement between Signalife and Co-Conspirator 1, pursuant to which Signalife paid Co-Conspirator 1 approximately $680,000 in cash and several million shares of Signalife stock, purportedly for various consulting services regarding Signalife products. As STEIN well knew, Co-Conspirator 1 performed no such consulting services. Co-Conspirator 1 in turn remitted approximately $1.5 million, which included the majority of the $680,000 cash as well as proceeds from selling the Signalife stock, back to STEIN.

11. STEIN and his co-conspirators also misappropriated Signalife's assets by orchestrating agreements under which Signalife paid third parties to promote Signalife

stock but then misled Signalife's corporate counsel about the stock promotion agreements.

12. To conceal their scheme to defraud Signalife investors, STEIN and others testified falsely under oath to the SEC. For example, in sworn testimony on or about December 17-18, 2009, April 15, 2010, and July 8, 2010, STEIN provided false and misleading testimony regarding, among other topics, his role at Signalife, purported sales and shipment of Signalife products, the placement of Signalife stock in nominee accounts, the purportedly blind trusts, and the sham consulting agreement between Co-Conspirator 1 and Signalife.

## The Conspiracy

13. From in or about July 2005 until in or about July 2010, within the Southern District of Florida and elsewhere, defendant

## MITCHELL J. STEIN

did unlawfully and knowingly combine, conspire, confederate and agree with others, both known and unknown, to commit the offenses of mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, respectively.

## Purpose of the Conspiracy

14. It was a purpose of the conspiracy that STEIN and his co-conspirators would enrich themselves by artificially inflating the share price of Signalife through the dissemination of false information, then selling their shares of Signalife stock at those inflated prices. In addition, STEIN and his co-conspirators misappropriated Signalife's

assets through sham agreements, which diverted approximately $1.5 million in corporate assets to STEIN.

## Manner and Means of the Conspiracy

15.   The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

  a. The conspirators caused Signalife to issue false and misleading press releases regarding the company's finances and operations.

  b. The conspirators caused the interstate shipment of Signalife products to the address of an individual who was not a customer of Signalife and who had not ordered any Signalife products, to create the false appearance of sales activity and order fulfillment by Signalife.

  c. The conspirators caused documents to be filed with the SEC that included false and misleading information regarding the finances and operations of Signalife.

  d. The conspirators concealed their ownership, control, and sale of Signalife stock by, among other things, placing their shares of Signalife stock in nominee accounts and falsely claiming to hold their shares of Signalife stock in blind trusts.

  e. The conspirators misappropriated Signalife's assets, including approximately $680,000 in cash and several million dollars worth of stock, using sham agreements and false and misleading documents.

    f. The conspirators provided and directed others to provide false and misleading testimony to the SEC.

## Overt Acts

16. In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

    a. On or about January 11, 2008, STEIN emailed from Boca Raton, Florida two false and misleading documents purporting to be change of address notices from Signalife's customers to Signalife's Chief Executive Officer.

    b. On or about March 25, 2008, STEIN caused two false and misleading purchase order confirmations to be faxed from Boca Raton, Florida to Signalife's corporate counsel in Calgary, Canada.

    c. On or about June 11, 2008, STEIN caused a false and misleading letter regarding a purported purchase order to be faxed from Boca Raton, Florida to Signalife's corporate counsel in Calgary, Canada.

(All in violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH FOUR
### (Mail Fraud)

17. The allegations contained in paragraphs 1 through 12 and 14 through 16 of this Indictment are realleged and incorporated as though set forth in full herein.

18. On or about the respective dates shown below, each such date constituting a separate count of this Indictment, within the Southern District of Florida and elsewhere, defendant

**MITCHELL J. STEIN,**

aided and abetted by others, having devised and intending to devise the scheme and artifice to defraud described above, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme or artifice or attempting to do so, did: (a) place in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the Postal Service; (b) deposit and cause to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier; (c) take and receive any matter and thing whatever that has been sent and delivered by any private and commercial interstate carrier; and (d) knowingly cause to be delivered by mail and by private and commercial interstate carrier any matter and thing whatever according to the direction thereon, the following:

| Count | Date | Mailing |
|---|---|---|
| 2 | March 19, 2008 | A package containing Stock Certificate No. 5879 for 300,000 shares to be delivered via DHL from Draper, Utah to Boca Raton, Florida |
| 3 | June 12, 2008 | A package containing Stock Certificate No. 6088 for 390,000 shares to be delivered via DHL from Draper, Utah to Boca Raton, Florida |
| 4 | August 22, 2008 | A package containing Stock Certificate No. 6232 for 400,000 shares to be delivered via DHL from Draper, Utah to Boca Raton, Florida |

(All in violation of Title 18, United States Code, Sections 1341 and 2.)

### COUNTS FIVE THROUGH SEVEN
### (Wire Fraud)

19.  The allegations contained in paragraphs 1 through 12 and 14 through 16 of this Indictment are realleged and incorporated as though set forth in full herein.

20.  On or about the respective dates shown below, each such date constituting a separate count of this Indictment, within the Southern District of Florida and elsewhere, defendant

**MITCHELL J. STEIN,**

aided and abetted by others, having devised and intending to devise the scheme and artifice to defraud described above and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign

commerce, any writings, signs, signals, pictures and sounds, for the purpose of executing such scheme and artifice:

| Count | Date | Wire Transmission |
|---|---|---|
| 5 | March 25, 2008 | Facsimile of purported purchase order confirmation from Boca Raton, Florida to Calgary, Canada |
| 6 | March 25, 2008 | Facsimile of purported purchase order confirmation from Boca Raton, Florida to Calgary, Canada |
| 7 | June 11, 2008 | Facsimile of purported purchase order cancellation from Boca Raton, Florida to Calgary, Canada |

(All in violation of Title 18, United States Code, Sections 1343 and 2.)

### COUNTS EIGHT THROUGH TEN
### (Securities Fraud)

21. The allegations contained in paragraphs 1 through 12 and 14 through 16 of this Indictment are realleged and incorporated as though set forth in full herein.

22. On or about the dates shown below, each such date constituting a separate count of this Indictment, within the Southern District of Florida and elsewhere, defendant

**MITCHELL J. STEIN,**

aided and abetted by others, knowingly executed and attempted to execute a scheme and artifice (a) to defraud any person in connection with any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), namely, Signalife, and (b) to obtain, by means of false or fraudulent pretenses, representations, and promises, any money or property in connection with any security of an issuer with a class of securities registered under

section 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l), namely, Signalife, as follows:

| Count | Date | Description |
|---|---|---|
| 8 | January 28, 2008 | Sale of approximately 50,148 shares of Signalife stock from Pacific West account #1470 for proceeds of approximately $19,755 |
| 9 | March 5, 2008 | Sale of approximately 52,550 shares of Signalife stock from Ameritrade account #5251 for proceeds of approximately $36,388 |
| 10 | April 18-22, 2008 | Sale of approximately 118,100 shares of Signalife stock from Ameritrade account #5251 for proceeds of approximately $115,820 |

(All in violation of Title 18, United States Code, Sections 1348 and 2.)

### COUNTS ELEVEN THROUGH THIRTEEN
### (Money Laundering)

23.     The allegations contained in paragraphs 1 through 12 and 14 through 16 of this Indictment are realleged and incorporated as though set forth in full herein.

24.     On or about the dates shown below, each such date constituting a separate count of this Indictment, within the Southern District of Florida and elsewhere, defendant

**MITCHELL J. STEIN,**

aided and abetted by others, did knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, the transfer of proceeds of sales of Signalife stock, such property having been derived from a specified unlawful activity as provided in Title 18, United States Code, Section 1956(c)(7), incorporating Title 18, United States Code, Section 1961(1), to wit: mail

12

fraud (Title 18, United States Code, Section 1341); wire fraud (Title 18, United States Code, Section 1343); and securities fraud (Title 18, United States Code, Section 1348):

| Count | Date | Transaction |
|---|---|---|
| 11 | January 29, 2008 | Wire transfer of $19,718 from Pacific West account #1470 to Manufacturer's account #2154. |
| 12 | March 5, 2008 | Wire transfer of $34,000 from Ameritrade account #5251 to Manufacturer's account #2154. |
| 13 | April 22, 2008 | Wire transfer of $105,000 from Wachovia account #5541 to Manufacturer's account #2154. |

(All in violation of Title 18, United States Code, Sections 1957 and 2.)

## COUNT FOURTEEN
(Conspiracy to Obstruct Justice)

25. The allegations contained in paragraphs 1 through 12 and 14 through 16 of this Indictment are realleged and incorporated as though set forth in full herein.

26. From on or about October 16, 2009 through on or about July 8, 2010, in the Southern District of Florida and elsewhere, defendant

**MITCHELL J. STEIN**

did unlawfully and knowingly combine, conspire, confederate and agree with others, both known and unknown, to commit offenses against the United States, namely: to corruptly influence, obstruct and impede, and endeavor to influence, obstruct and impede, in whole or in part, a pending proceeding before any department and agency of the United States of America, that is, the SEC, in violation of Title 18, United States Code, Section 1505.

## Purpose of the Conspiracy

27. It was a purpose of the conspiracy that STEIN and his co-conspirators would corruptly influence, obstruct and impede the SEC's investigation of Signalife, in an effort to, among other things, perpetuate and prevent detection of the scheme and artifice described above.

## Manner and Means of the Conspiracy

28. The conspirators used the following manner and means, among others, to accomplish the objects and purpose of the conspiracy:

   a. The conspirators discussed, developed, and agreed upon false testimony that they would provide to the SEC regarding, among other topics, purported sales and shipment of Signalife products, the sham consulting agreement between Co-Conspirator 1 and Signalife, and the placement of Signalife stock in nominee accounts.

## Overt Acts

29. In furtherance of the conspiracy and to effect its object, the co-conspirators committed the following overt acts, among others, in the Southern District of Florida and elsewhere:

   a. Between on or about December 17, 2009 and July 8, 2010, STEIN testified falsely on multiple occasions before the SEC in Washington, DC.

      b. In or about February 2010, Defendant and Co-Conspirator 1 met at a restaurant in Boca Raton, Florida and discussed false testimony that Co-Conspirator 1 would provide to the SEC.

      c. On or about February 25, 2010, Co-Conspirator 1 testified falsely before the SEC in Washington, DC.

(All in violation of Title 18, United States Code, Section 371.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH THIRTEEN

30.    The violations alleged in Counts One through Thirteen of this Indictment are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c).

31.    As a result of the offenses alleged in Counts One through Thirteen of this Indictment, defendant MITCHELL J. STEIN shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly, as the result of a conspiracy, in violation of Title 18, United States Code, Section 1349, a mail fraud scheme, in violation of Title 18, United States Code, Section 1341, a wire fraud scheme, in violation of Title 18, United States Code, Section 1343, securities fraud, in violation of Title 18, United States Code, Section 1348, and money laundering, in violation of Title 18, United States Code, Section 1957. The property to be forfeited includes, but is not limited to, a money judgment representing the proceeds

obtained, directly or indirectly, as a result of the charged offenses, which upon entry of an order of forfeiture shall be reduced to a monetary judgment.

32. By virtue of the commission of the felony offenses charged in Counts One through Thirteen of this Indictment, any and all interest that defendant MITCHELL J. STEIN has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c).

33. If, as a result of any act or omission of the defendants, the property identified above:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

(Criminal Forfeiture, in violation of Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), and Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

DENIS J. McINERNEY
Chief, Fraud Section
Criminal Division, U.S. Department of Justice

_____
ANDREW H. WARREN
ALBERT STIEGLITZ
Trial Attorneys

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

MITCHELL J. STEIN,

              **Defendant.**
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information:**

**Court Division**: (Select One)

____ Miami    ____ Key West
____ FTL    XX WPB    ____ FTP

New Defendant(s)    Yes ____ No ____
Number of New Defendants ____
Total number of counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    No
   List language and/or dialect ____

4. This case will take   15   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)           (Check only one)

   I    0 to 5 days    ____     Petty    ____
   II    6 to 10 days    ____     Minor    ____
   III    11 to 20 days    ____     Misdem.    ____
   IV    21 to 60 days    ____     Felony    XX
   V    61 days and over    XX

6. Has this case been previously filed in this District Court? (Yes or No)   No
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)   No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes   XX No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes   XX No

                                             _____
                                             ANDREW H. WARREN
                                             TRIAL ATTORNEY, U.S. DEPARTMENT OF JUSTICE
                                             DC Bar No./Court No. 503003

*Penalty Sheet(s) attached                                                               REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Mitchell J. Stein

**Case No:**_____

Count # 1

  Conspiracy to commit mail fraud and wire fraud

  Title 18, United States Code, Section 1349

* **Max.Penalty**: 20 years imprisonment; 3 years supervised release; $250,000 fine

Counts # 2-4

  Mail fraud

  Title 18, United States Code, Section 1341

* **Max.Penalty (each count)**: 20 years imprisonment; 3 years supervised release; $250,000 fine

Counts # 5-7

  Wire fraud

  Title 18, United States Code, Section 1343

* **Max.Penalty (each count)**: 20 years imprisonment; 3 years supervised release; $250,000 fine

Counts # 8-10

  Securities fraud

  Title 18, United States Code, Section 1348

* **Max.Penalty (each count)**: 20 years imprisonment; 3 years supervised release; $250,000 fine

Counts # 11-13

  Money laundering

  Title 18, United States Code, Section 1957

* **Max.Penalty (each count)**: 10 years imprisonment; 3 years supervised release; $250,000 fine
Counts # 11-13

Count # 14

  Conspiracy to obstruct justice

  Title 18, United States Code, Section 371

* **Max.Penalty**: 5 years imprisonment; 3 years supervised release; $250,000 fine